## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

GENERAL JONES,                            :
     **Plaintiff**                      :

                                 :

     vs.                           :      **C.A. No. 12**~~CA12- 574S~~

                                 :

CITY OF PROVIDENCE, by and through its  :  **<u>Jury trial demanded</u>**
Treasurer, **JAMES J. LOMBARDI, III, alias,**  :
**MATTHEW JENNETTE, alias**, individually and :
in his official capacity as a police officer employed :
by the City of Providence, and **ERIC CHABOT,**  :
**alias,** individually and in his official capacity as a  :
police officer employed by the City of Providence, :
     **Defendants**                    :

## COMPLAINT

### I.     <u>Introductory Statement</u>

This action is brought by the Plaintiff seeking relief for injuries that he suffered as a result of

acts and/or omissions committed by Defendants in violation of the Fourth and Fourteenth

Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, 42 U.S.C.

§1981, Article I, §§2 and 6 of the Rhode Island Constitution, for invasion of his right to privacy

pursuant to R.I.G.L. §9-1-28.1(a)(1)(i), and at common law.

### II.     <u>Parties</u>

1.     Plaintiff is a resident of the City of Providence, County of Providence, State of

Rhode Island.

2.     Defendant City of Providence ("City") is a duly authorized and organized

municipality pursuant to the laws of the State of Rhode Island and is sued by and through its

Treasurer, James J. Lombardi, III, alias, the official designated by State Law, R.I.G.L. §45-15-5,

to be named in a suit for relief against the City.

3.      Defendant Matthew Jennette, alias ("Jennette") is sued individually and in his official capacity as a police officer employed by the City Police Department.

4.      Defendant Eric Chabot, alias ("Chabot") is sued individually and in his official capacity as a police officer employed by the City Police Department.

### III.      Jurisdiction

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202.

### IV.      Venue

6.      Venue is proper in this Court since one or more of the Defendants reside or may be found in the State of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

### V.      Material Facts

7.      The Plaintiff is an African-American male.

8.      On or about August 19, 2009, the Plaintiff was a passenger in a motor vehicle operated by his friend, Elgin Brown, an African American male, which was travelling on Hawkins Street in Providence, Rhode Island.

9.      That while traveling on Hawkins Street, the Plaintiff observed a City police vehicle travelling in the opposite direction.

10.      The police vehicle was operated by Patrolman John Bento.  Defendant Jennette was a passenger in the police vehicle.

11.      The police vehicle reversed course and then began to follow the Plaintiff's motor vehicle.

12.      Plaintiff's vehicle then made a left turn onto Branch Avenue.

13.     The police vehicle also turned left onto Branch Avenue and engaged its overhead lights.

14.     Mr. Brown immediately pulled the motor vehicle over to the side of the road and stopped the vehicle.

15.     The police vehicle then stopped behind Plaintiff's motor vehicle.

16.     Defendant Jennette and Officer Bento exited their police vehicle and approached Plaintiff's vehicle.

17.     Defendant Jennette and/or Officer Bento ordered Mr. Brown and the Plaintiff to exit their motor vehicle.

18.     The Plaintiff was immediately placed in handcuffs and then searched by Defendant Jennette, who also searched the Plaintiff's sneakers.

19.     Mr. Brown was also handcuffed and patted down by Officer Bento, who, on information and belief, also searched Mr. Brown's sneakers.

20.     Defendant Jennette subsequently stated to the Plaintiff, "Today is your day," or words to like effect.

21.     The Plaintiff was seated on the street curb and Mr. Brown was placed in the rear of the police vehicle.

22.     Defendant Jennette and/or Officer Bento then searched the motor vehicle in which Plaintiff had been riding.

23.     Following Defendant Jennette and Officer Bento's search of the Plaintiff, Mr. Brown and the motor vehicle, no weapons, drugs or contraband were discovered.

24.     Defendant Jennette and/or Officer Brown then conducted a criminal check of the Plaintiff. The results of the criminal check were negative for any outstanding warrants.

25.     Approximately 15 minutes after the initial traffic stop, a marked police SUV, operated by Defendant Chabot, arrived at the scene.

26.     The Plaintiff recognized Defendant Chabot from previous police encounters.

27.     During a previous motor vehicle stop, Defendants Jeannette and Chabot had threatened to take the Plaintiff to the police station and subject him to a body cavity search.

28.     A few minutes after Defendant Chabot arrived at the scene, the Plaintiff, still handcuffed, was placed in the rear of Defendant Chabot's SUV.

29.     Without proper cause or justification, Defendants Jennette and Chabot left the scene with the Plaintiff and transported him to another location.

30.     While travelling in the SUV, Defendant Jennette stated to the Plaintiff, "Either you are going to work with me or we are going to find something that you have on you," or words to like effect, implying that Defendant Jennette would place contraband on Plaintiff's person to make it appear as if Plaintiff had committed a crime.

31.     The Plaintiff repeatedly told Defendants Jennette and Chabot that he was not in possession of any drugs or weapons.

32.     While transporting the Plaintiff, Defendant Jennette also asked the Plaintiff, "Have you ever had a cavity search?," or words to like effect.

33.     Defendants Jennette and Chabot and Plaintiff then arrived at or near Esek Hopkins Middle School ("Middle School") in Providence, Rhode Island.

34.     Defendant Chabot pulled the police SUV alongside some bushes near the Middle School.

35.     Defendant Jennette then exited the SUV and came to the rear driver's side, where the Plaintiff was seated.

**Page 4 of 11**

36.     At that time, Defendant Jennette said to the Plaintiff, "I will give you 45 seconds to come up with a name of somebody and give up what you have or we are going up there," or words to like effect, suggesting he would search Plaintiff's anal cavity.

37.     Defendant Jennette then removed a rubber or latex glove from his pocket and put it on his hand.

38.     He then stated to the Plaintiff, "I know what you are thinking.  What kind of cop would do something like this?  We are the cops that can do something like this.  Are you sure you don't have something for me?", or words to like effect.

39.     Defendant Jennette then ordered the Plaintiff to exit the police SUV.  Defendant Chabot also exited the SUV at that time.

40.     While Plaintiff was handcuffed and standing between the SUV and some bushes, and in the immediate presence of Defendant Chabot, Defendant Jennette unbuckled Plaintiff's belt and pulled down his pants and underwear exposing the Plaintiff's genitals.

41.     Defendant Jennette then grabbed the Plaintiff's penis and testicles and searched that area of his body.

42.     Defendant Jennette then ordered the Plaintiff to turn around and bend over.  The Plaintiff complied with Defendant Jennette's orders.

43.     Defendant Jennette then spread the Plaintiff's buttocks and touched the outside of his rectum in an apparent attempt to insert his finger.

44.     Defendant Jennette then stated to the Plaintiff, "Stop tensing up," or words to like effect.  He also stated, "I am going to give you a chance to give up somebody or I am going to go up there [inside Plaintiff's rectum]," or words to like effect.

45.     Defendant Jennette then made an apparent attempt to insert his finger inside Plaintiff's rectum.

46.     In an attempt to stop the unlawful and humiliating strip search and body cavity search, the Plaintiff provided a false name to Defendants Jennette and/or Chabot.

47.     Defendant Jennette then concluded his strip search and body cavity search of the Plaintiff and placed him in the rear of the police SUV.

48.     At no time did Defendants Jennette and/or Chabot locate any contraband on Plaintiff's person during the strip search or body cavity search.

49.     Defendants Jennette and Chabot and Plaintiff then travelled back to the scene of the initial traffic stop at Branch Avenue.

50.     Defendant Jennette told the Plaintiff that, "You will be an informant for me. If you don't, I will be coming and looking for you," or words to like effect.

51.     Mr. Brown's mother then arrived at the scene. The Plaintiff and Mr. Brown were released into her custody.

52.     At no time during the above-described incident was the Plaintiff placed under arrest by a City police officer, including, but not limited to, Defendants Jennette and Chabot.

53.     At no time following the above-described incident was the Plaintiff or Mr. Brown charged with a crime.

54.     The Defendants did not have reasonable suspicion to subject Plaintiff to a stop at the initial traffic scene.

55.     The Defendants did not have a lawful basis for subjecting Plaintiff to searches of his person at the initial traffic stop scene.

56.     In addition, the Plaintiff was forced to undergo an unlawful and humiliating strip search and body cavity search, not incident to an arrest, and absent a warrant or any reasonable suspicion that he was carrying a weapon or contraband.

57.     The strip search and body cavity search of the Plaintiff was "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, [and] repulsive, signifying degradation and submission." *Blackburn v. Snow*, 771 F.2d 556, 564 (1st Cir. 1985).

58.     As a result of the unlawful conduct of the Defendants, the Plaintiff was subjected to the personal indignity and invasion of privacy occasioned by a strip search and body cavity search not incident to an arrest and absent a warrant or any reasonable grounds to justify such searches and under conditions where there was no privacy.

59.     That the stop, searches of his person, detention, strip search and/or body cavity search of the Plaintiff by Defendants Jennette and/or Chabot, as described above, were unlawful under the circumstances.

60.     The Defendants knew or should have known that their searches and seizure of the Plaintiff as described above were unlawful under the circumstances.

61.     Despite such knowledge, the City, by and through its policy-making officials and agents, approved, condoned, intentionally ignored, and/or was deliberately indifferent to the custom, policy and/or practice of City police officers routinely conducting unlawful stops, searches of the person, detentions, strip searches and/or body cavity searches of persons, and failed to change or eliminate such unlawful policy.

62.     That the City failed to properly select, train, instruct, supervise, and/or discipline City police officers, including, but not limited to, Defendants Jennette and/or Chabot, regarding the proper basis, manner and/or circumstances in which searches and/or seizures may be conducted,

**Page 7 of 11**

thereby resulting in the unlawful searches and seizures of the Plaintiff as described above.

63.     That on information and belief, during all relevant time periods, a custom or policy existed in the City police department wherein the City acquiesced to, condoned, approved, encouraged and/or was deliberately indifferent to the practice of City police officers routinely conducting unlawful searches and seizures, and failed to change or eliminate such unlawful custom or policy.

64.     That Defendant City is liable under the doctrine of *respondeat superior* for the acts and/or omissions of its agents, including, but not limited to, Defendants Jennette and/or Chabot, police officers employed by the City, whose acts and/or omissions were within the scope of their employment and were the proximate cause of the injuries suffered by the Plaintiff. R.I.G.L. §9-31-1.

65.     At all relevant times, the Defendants acted intentionally, willfully, maliciously, and/or with reckless or callous indifference to Plaintiff's constitutionally protected rights. Furthermore, at all relevant times, the Defendants knew or should have known that their conduct would cause or contribute to the deprivation of Plaintiff's civil rights.

66.     As a result of the Defendants' conduct, Plaintiff has suffered, and will continue to suffer, severe mental anguish, pain and suffering, deprivation of his civil rights, and other great damage.

67.     Prior to institution of the within action against the City, Plaintiff complied with R.I.G.L. §45-15-5. More than forty (40) days have elapsed since Plaintiff made presentment of his claim to the City without receiving just and due compensation.

## VI.    Claims For Relief

68.    The Plaintiff incorporates in the counts below the allegations contained in ¶¶1-67 above.

### Count One
### Unreasonable Searches and Seizures in Violation of 42 U.S.C. §1983

69.    Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated Plaintiff's right to be free from unreasonable searches and seizures, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

### Count Two
### Deprivation of Civil Rights in Violation of 42 U.S.C. §1981

70.    That Defendants, acting under color of state law, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, unlawfully discriminated against the Plaintiff on the basis of his color, causing the Plaintiff to sustain damages as aforesaid, and thereby deprived the Plaintiff of rights secured under 42 U.S.C. §1981.

### Count Three
### Deprivation of Due Process in Violation of Article I, §2 of the Rhode Island Constitution

71.    Defendants, acting under color of state law, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, unlawfully discriminated against the Plaintiff on the basis of his color, causing the Plaintiff to sustain damages as aforesaid, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under Article I, §2 of the Rhode Island Constitution.

## Count Four
## Unreasonable Search in Violation of Article I, §6 of the Rhode Island Constitution

72.     Defendants, acting under color of state law, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated Plaintiff's right to be free from unreasonable searches and seizures, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under Article I, §6 of the Rhode Island Constitution.

## Count Five
## Rhode Island Privacy Act Violation

73.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, subjected the Plaintiff to a deprivation of his right to be secure from unreasonable intrusion upon his physical solitude or seclusion pursuant to R.I.G.L. §9-1-28.1(a)(1)(i), and thereby caused the Plaintiff to suffer damages as aforesaid.

## Count Six
## Assault

74.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, did commit acts of a threatening nature towards the Plaintiff, causing the Plaintiff to reasonably fear imminent bodily harm, thereby committing an assault, causing the Plaintiff to suffer damages as aforesaid.

## Count Seven
## Battery

75.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, did intentionally cause offensive contact with and unconsented touching of the Plaintiff as well as trauma upon the body of the Plaintiff, thereby committing a battery, causing the Plaintiff to suffer damages as aforesaid.

## VII.   Prayers for Relief

**WHEREFORE,** the Plaintiff prays that this Court grant the following relief:

1.     A declaratory judgment that the Defendants, in the manner described herein, violated the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, 42 U.S.C. §1981, as well as Article I, §6 of the Rhode Island Constitution and R.I.G.L. §9-1-28.1(a)(1)(i).

2.     An award of compensatory damages.

3.     An award of punitive damages.

4.     An award of reasonable attorney's fees and costs of litigation to Plaintiff's attorney pursuant to 42 U.S.C. §1988.

5.     An award of reasonable attorney's fees and costs of litigation to Plaintiff's attorney pursuant to R.I.G.L. §9-1-28.1(b).

6.     Such other and further relief as the Court deems just and proper.

## VIII.   Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## IX.   Designation of Trial Counsel

The Plaintiff hereby designates Richard A. Sinapi, Esquire as trial counsel.

Plaintiff,
**General Jones,**
By his attorneys,
**SINAPI, FORMISANO & COMPANY, LTD.**

Dated: August _10_ , 2012

Richard A. Sinapi, Esq. (#2977)
100 Midway Road, Suite 1
Cranston, RI 02920
Phone: (401) 944-9690; FAX: (401) 943-9040